IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN PAULE KENNEDY,<br><br>               Plaintiff,<br><br>     v.<br><br>P. HAYES, et al.,<br><br>               Defendants. | Case No.: 1:09-cv-01946 JLT (PC)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>(Doc. 1) |

Stephen Paule Kennedy ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts this action against P. Hayes, Ken Clark, Dr. O. Beregovskaya, D. James, California Department of Corrections and Rehabilitation Director ("CDCR Director"), Doe 1 (A-Yard medical supervisor), Doe 2 (direct supervisor of P. Hayes), and Does 3-6 (various staff), collectively, "Defendants." Plaintiff filed his Complaint against Defendants on November 9, 2010 (Doc. 1), which is now before the Court for screening.

**I.  Screening Requirement**

Where a prisoner seeks relief against "a governmental entity or officer or employee of a governmental entity," the Court is required to review the complaint and identify "cognizable claims." 28 U.S.C § 1915(a)-(b). The Court must dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28

U.S.C. § 1915(e)(2). A claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In determining whether a claim is malicious, the Court examines whether the claims are pled in good faith. *Kinney v. Plymouth Rock Squab. Co.*, 236 U.S. 43, 46 (1915).

## II.  Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and…a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed.R.Civ.P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me unlawfully accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further that,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are

2

"merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 129 S.Ct. at 1949. Where the factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; conclusions in the pleading are not entitled to the same assumption of truth. *Id.* If the Court determines the complaint fails to state a cognizable claim, the Court may grant leave to amend to the extent that deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III.  § 1983 Claims

Section 1983 of title 42 of the United States Code does not provide for substantive rights; it is "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In pertinent part, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983. To plead a § 1983 violation, a plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 28 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976). In addition, a plaintiff must allege he suffered a specific injury, and show causal relationship between the defendant's conduct and the injury suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made"). As with other complaints, conclusory allegations unsupported by facts are insufficient to state a civil rights claim under § 1983. *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).

///

///

## IV.   Factual Allegations of Plaintiff

Plaintiff alleges he had surgery to repair an inguinal hernia and a liver biopsy on December 1, 2008. (Doc. 1 at 3). Plaintiff was ordered to receive two Vicodin every four hours as need for five days, bandage changes, and have the incision staples removed after twelve days. *Id.* On December 3, 2008, at approximately noon, Plaintiff retrieved his prison clothing that had been stored for him while he underwent his surgery at a neighboring prison. *Id.* Then he reported to the pill dispensary line to receive his pain medication. *Id.* When Hayes refused to provide the pain medication, Plaintiff requested his soiled bandages be changed, and informed Hayes he felt ill and light-headed. *Id.* However, defendant Hayes, a licensed vocational nurse, "refused to provide the prescribed Vocodin for pain relief . . ." for several reasons. *Id.*

Hayes refused to provide the medication because Plaintiff did not have a "CDCR identification card" which was in the possession of an off-duty correctional officer. (Doc. 1 at 4). Instead, he had a temporary photo identification card in lieu of his card . *Id.* Hayes criticized Plaintiff also because he was not on time for med call and Hayes noticed that Plaintiff was carrying his bag of clothing. *Id.* Thus, Hayes "criticized him for 'handling his clothing needs instead of getting his medication.'" *Id.* Hayes telephoned Plaintiff's cell block officer, Lopez. *Id.* at 5. Hayes told Plaintiff that Lopez reported that he saw Plaintiff with a bag of clothing heading toward the laundry room. *Id.* When he returned to the cell block, Lopez denied telling Hayes anything about Plaintiff carrying a bag of laundry. *Id.* at 6. Despite that Plaintiff asked Hayes to change his bandages "due to them being soiled, and informed L.V.N. Hayes that he was feeling ill and light headed," Hayes refused to treat Plaintiff. *Id*. at 5.

At approximately 1:40 pm on December 3, 2008, the correctional officer who had Plaintiff's identification card returned to work and gave Plaintiff his card. (Doc. 1 at 6). "With I.D. card in hand, Plaintiff once again attempted to receive treatment and medication," but it was refused. *Id.* About five minutes later, Plaintiff walked to the program office to attempt to gain assistance from a sergeant. *Id.* A sergeant attempted to escort Plaintiff back to the medical area but Plaintiff "lost consciousness and collapsed." *Id.* Hayes arrived at Plaintiff's location and found him in a "balled-

up in a fetus position on the ground." *Id.*   Hayes told other medical personal Plaintiff was faking it and ordered him to get up. *Id.*

When he refused, Plaintiff was transported via a stretcher to the medical building but Hayes "directed other staff to leave him alone (lying on the stretcher) because 'he's faking it.'" (Doc 1. at 7). Around 3 pm, Hayes observed Plaintiff to be moving around on the gurney and trying to sit up. *Id*. Hayes told Plaintiff "it would hurt less if you stopped moving around." *Id.*  In response, Plaintiff "warned" Hayes that she should "watch how she treated people." *Id.*  When Hayes asked it he was threatening her, he denied this but added, "God will take care of you." *Id.*

At about 4:00 p.m., Dr. Beregovskaya tended to Plaintiff. *Id.* at 7-8.   He removed the bandage and observed that the surgical wound was "'infected' and 'pussing.'" *Id.*  Dr. Beregovkaya placed Plaintiff on a course of antibiotics and ordered that he receive his pain medication. *Id.* at 8.

On December 5, 2008, Plaintiff was sent to a prison hospital to treat his "post surgical infection." (Doc. 1 at 8).  There, "[t]he treating physician asked [Plaintiff] to sign a document saying he understood the surgical procedure about to be performed upon him to address his 'infection' had a high risk of 'paralysis' and even 'death.'" *Id.*  After Plaintiff signed the form, the treating doctor used a needle to drain the wound, which caused Plaintiff pain. *Id.*  Plaintiff returned to the medical center for removal of the staples from his surgery, on December 17, 2009, but Hayes refused to treat Plaintiff. *Id.* at 10.  Therefore, Plaintiff removed the staples himself. *Id.*

Plaintiff received notice on December 15, 2008, that Hayes claimed Plaintiff threatened her which was based upon his statement made to her that "God will take care of you."  He learned disciplinary action would be taken against Plaintiff, who was charged with "behavior which could lead to violence." *Id.* at 7-8.  Defendant James, as senior hearing officer, oversaw the proceedings on January 12, 2009. *Id.* at 8.  James found Plaintiff guilty, and informed him "that inmates were not permitted to speak in subject of religion." *Id.* at 8.  Plaintiff was punished with forfeiture of credits for thirty days, loss of third day visitations for ninety days, and loss of "AM and PM Yard privileges" for ninety days." *Id.* at 9.

**V.   Discussion and Analysis**

Plaintiff alleges violations of his Eighth and First Amendment rights for freedom from cruel and unusual punishment and "freedom to express religious beliefs." (Doc. 1 at 10, 12). In addition, Plaintiff alleges deliberate indifference, retaliation, conspiracy to cover misconduct, and intentional infliction of emotional distress. *Id.* at 12. Plaintiff seeks to assert these claims against Defendants in both their official and individual capacities. *Id.*

### A.  Defendants' liability in official capacities

The Eleventh Amendment provides: "The Judicial power the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *U.S. Const. amend XI*. Immunity under the Eleventh Amendment may apply to officials of a state because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Supreme Court opined, "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Consequently, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.*

In this case, Defendants are employees of the state at Corcoran State Prison and the California Department of Corrections and Rehabilitation. Given the immunity provided by the Eleventh Amendment, Plaintiff is unable to assert claims against Defendants in their official capacities. Therefore, as to Defendants in their official capacities, the complaint is **DISMISSED**.

### B.  Eighth Amendment protections

Plaintiff argues Defendants "acted with deliberate indifference to Plaintiff's serious medical needs, and violated Plaintiff's rights, and constituted cruel and unusual punishment under the Eighth Amendment of the United States Constitution." (Doc. 1 at 10). The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1976). Included in the prohibition of cruel and unusual punishments is a responsibility placed upon prison

officials to provide medical care to prisoners. *Id.* at 104-05. To allege a claim arising in the context of inadequate medical care, a plaintiff must point to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. A cognizable claim has two elements: "the seriousness of the prisoner's medical need and the nature of defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *see also Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006).

### 1. Serious medical need

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059, quoting *Estelle*, 429 U.S. at 104. Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60, citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990).

Plaintiff alleges he had surgery to repair an inguinal hernia and a liver biopsy on December 1, 2008. His aftercare called for him to take Vicodin every four hours as needed for pain. *Id.* Plaintiff alleges that he reported that his bandages were "soiled" and that "he felt ill and lightheaded." After collapsing approximately two hours after reporting his condition, he was taken to the medical facility for treatment. There, he was found to have an infected surgical wound and was treated for the infection and for his pain. Because his ailments were "worthy of treatment" and he alleges that he was in "substantial pain," Plaintiff's allegations, if true, are sufficient to demonstrate he had a serious medical need. *See McGuckin*, 974 F.2d at 1059.

### 2. Deliberate indifference

If a prisoner establishes the existence of a serious medical need, he must then show prison officials responded to the need with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 291 F.3d 1051, 1060

(9th Cir. 2004). In clarifying the culpability required for "deliberate indifference," the Supreme Court held,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw that inference.

*Farmer*, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." *Gibson v. County of Washoe*, 290 F.3d 1174, 1193 (9th Cir. 2002) (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* at 1188.

Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent . . . than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." *Holliday v. Naku*, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009), citing *McGuckin*, 974 F.2d at 1060. Claims of negligence or medical malpractice are insufficient to claim deliberate indifference. *Id.* at 394; *Toguchi*, 391 F.3d at 1057. Generally, deliberate indifference to serious medical needs may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988).

Plaintiff alleges that defendant Hayes refused to treat him. He alleges that he told Hayes that his bandages were soiled and that he felt ill and lightheaded. *Id.* at 6-7. However, there is no indication that Plaintiff's bandaged surgical wound was not hidden from view due to his clothing. *Id.* Thus, there is no indication that Hayes knew of Plaintiff's medical condition. On the other hand, Plaintiff admits that Hayes believed that he was "faking" his condition. *Id.* It appears that Hayes came to this conclusion because Plaintiff arrived at the "pill line" five minutes late and was carrying, what she believed, was a laundry bag which indicated to her that his laundry needs were a higher priority to Plaintiff than obtaining pain medication. *Id.* Plaintiff reports that Hayes repeatedly told others that Plaintiff was "faking" his condition. *Id.* Though Plaintiff *concludes* that Hayes knew that

8

1  this was untrue, he fails to plead any *facts* that would support this conclusion.  Because there are no
2  facts alleged that Plaintiff had actual knowledge that Plaintiff required medical care, her actions do
3  not rise to the level of an Eighth Amendment violation.  *See Gibson*, 290 F.3d at 1188.
4  Consequently, Plaintiff has not stated a cognizable claim for deliberate indifference against
5  defendant Hayes.

6         In *Gonzalez v. Reille,* 2008 U.S. Dist. LEXIS 23122, at *4 (N.D. Cal. Mar. 12, 2008), an
7  inmate was not provided medical care because members of the correctional staff believed he was
8  faking his need for treatment.  There, the court observed, "The allegations of the complaint disclose
9  insensitive comments and uncaring attitude by a lot of people, but fail to indicate that those made
10  any difference to Gonzales' medical needs.  The Eighth Amendment does not prohibit bad or
11  uncaring attitudes." *Id.*  As in *Gonzales*, Plaintiff has not alleged any further harm came to him as a
12  result of Hayes' attitude and belief that he was faking his need for treatment.  Plaintiff readily admits
13  that his wound had become infected *before* he had any contact with Hayes. (*Id.* at 7 "surgery site was
14  red, swollen").  Thus, at most, Hayes' conduct deprived him of one dose of pain medication and
15  delayed treatment of the infection by four hours.  (Doc. 1 at 3) Without more, this is insufficient to
16  demonstrate an Eighth Amendment violation.

17         Plaintiff asserts Dr. Beregovskaya was deliberately indifferent toward Plaintiff's medical
18  needs, apparently for the delay in treatment because Plaintiff lay on the gurney for approximately two
19  hours before treatment.  Likewise, Hayes' actions, that delayed treatment for four hours, does not
20  state a constitutional claim. Though delay in providing treatment may manifest deliberate
21  indifference, "mere delay . . . without more, is insufficient to state a claim of deliberate medical
22  indifference."  *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  In
23  *Gibson v. Woodford*, 2010 U.S. Dist. LEXIS 12979, 11-12 (E.D. Cal. Feb. 12, 2010),  the Court
24  rejected that a brief delay of over an hour was a constitutional violation.  The Court held, "On the
25  facts of this case, this relatively brief delay did not amount to deliberate indifference . . . Similar or
26  longer delays are often encountered in emergency rooms across the country under comparable
27  circumstances." *Id.*  Moreover, in addition to the delay in surgery or treatment, a plaintiff must
28  show harm arose as a result of the delay, such as further medical complications attributable to the

delay or pain and suffering. *Scott v. Keller*, 2010 U.S. Dist. LEXIS 95738, at *12 (E.D. Cal. Sept. 14, 2010); *see also Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curium). Plaintiff has not alleged any facts to support that the two-hour delay in receiving treatment from Dr. Beregovskaya or the four-hour delay caused by Hayes caused him any medical complication. Thus, Plaintiff has not stated a cognizable claim against either defendant.

Plaintiff failed to plead factual allegations linking the remaining defendants to the delay in his treatment or show the defendants had knowledge of his serious medical need. To state a cognizable claim, Plaintiff must plead facts to support that these defendants "had actual knowledge of the plaintiff's basic human needs *and* deliberately refused to meet those needs." *Johnson v. Lewis*, 271 F.3d 726, 734 (9th Cir. 2000) (emphasis added). Thus, Plaintiff has not stated a cognizable claim of inadequate medical care against any of the other defendants.

C.  Supervisor liability

There is no *respondeat superior* liability under § 1983, and the supervisor of an individual who allegedly violated a plaintiffs constitutional rights is not made liable for the constitutional violation simply by virtue of his role as a supervisor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, Plaintiff seeks to impose liability on the A-Yard medical supervisor ("Doe 1") and the direct supervisor of defendant Hayes ("Doe 2 "). (Doc. 1 at 10). However, Plaintiff has failed to allege these defendants knew of any alleged unlawful action. Furthermore, the deliberate indifference standard is met only when prison officials have actual knowledge; it is not sufficient to allege the defendants should have been aware of Plaintiff's medical needs. Finally, though Plaintiff states the supervisors acted with deliberate indifference, this conclusory statement, unsupported by any facts, is insufficient to state a claim. *See Sherman v*, 549 F.2d at 1290. Therefore, Plaintiff's claim for supervisor liability fails, and the Complaint as to defendants Doe 1 and Doe 2 is **DISMISSED**.

D.  First Amendment and expression of religious beliefs

The First Amendment provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. . . ." *U.S. Const. amend. I.* Inmates "retain protections afforded by the First Amendment," including the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct he sincerely believes is mandated by his faith. *Graham v. C.I.R.*, 822 F.2d 844, 850-51 (9th Cir. 1987). When an individual alleges regulations at a prison infringe on his rights, the regulations are evaluated by applying a "reasonableness test." *O'Lone*, 382 U.S. at 349. Under the reasonableness test, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff states he is Jewish and his statements that Hayes "should watch how she treated people" and "God will take care of you" were expressions of his beliefs. (Doc. 1 at 7). In support of this assertion, Plaintiff points to Romans 12:19, which he quotes as follows: "Do not [r]evenge yourselves beloved, but yeild (sic) place to the wrath; for it is written: 'Vengeance is mine; I will repay, says Jehovah." *Id.* at 38. Notably, Plaintiff failed to provide this explanation at his disciplinary hearing. Moreover, Plaintiff has not alleged any facts to support the implication that his faith requires, or even permits, him to make such comments made to Hayes that she "should watch how she treated people" and that "God will take care of you" to others.[1] Consequently, Plaintiff is unable to state a cognizable claim for a violation of the Free Exercise Clause.

E.   Conspiracy

In this case, Plaintiff alleges a "conspiracy to cover misconduct." (Doc. 1 at 12). Plaintiff does not clarify whether this claim of conspiracy is brought under § 1983, or under applicable state law.[2] A claim of conspiracy brought under § 1983 requires a plaintiff to "demonstrate the existence

---

[1] In addition, this explanation seems incredible given the circumstances surrounding his statement. *Iqbal*, 129 S.Ct. at 1949. On their face, the words spoken do not appear to provide Hayes religious guidance but, indeed, appear to be a threat that if she did not act, she would suffer consequences. Moreover, Plaintiff admits that when he said this, the words "WARNED" Hayes about her actions. Doc. 1 at 9.

[2] Under California law, "there is no stand alone cause of action for civil conspiracy." *Sandry v. First Franklin Fin. Corp.*, 2010 U.S. Dist. LEXIS 131601, at * 10 (E.D. Cal. Dec. 13, 2010), citing *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4 th 623, 632, 151 P.3d 1151 (Cal. 2007). However, liability for civil conspiracy may be established with (1) an

of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted). In addition, a plaintiff must show an "actual deprivation of constitutional rights." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006), quoting *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.3d 1539, 1540-42 (9th Cir. 1989). A conspiracy may be properly alleged when a plaintiff states "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights." *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997).

Notably, Plaintiff did not make any factual allegations regarding a conspiracy. The Court will not speculate as to which defendants Plaintiff believes conspired to violate his rights or the manner in which they did so. *See Bell Atlantic Corporation. v. Twombly*, 127 S.Ct. 1955, 1965 (a plaintiff must set forth more than labels and conclusions, and include the "grounds of his entitlement to relief") (citation omitted). Therefore, Plaintiff has not stated a cognizable claim for a conspiracy.

### F.  Intentional infliction of emotional distress

To state a cognizable claim for intentional infliction of emotional distress, Plaintiff must establish: (1) outrageous conduct by the defendants, (2) who intended to cause or recklessly disregarded of the probability of causing emotional distress, (3) and the defendants' actions were the actual and proximate cause (4) of the Plaintiff's severe emotional suffering. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004), citing *Brooks v. United States*, 29 F. Supp. 2d 613, 617 (N.D. Cal. 1998). Outrageous conduct is demonstrated when a "defendant's conduct was 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Van Horn v. Hornbeak*, 2009 U.S. Dist. LEXIS 16134, at *8 (E.D. Cal. Feb. 18, 2009), quoting *Ricard v. Pacific Indemnity Co.*, 132 Cal.App.3d 866, 895 (1982). However, intentional infliction of emotional distress is a tort arising under state law, and under the California Tort Claims Act, a plaintiff may not maintain an

---

agreement to commit a wrongful act, (2) commission of the wrong ful act, and (3) resulting damage. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511, 869 P.2d 545 (1994).

action for damages against a public employee unless he timely files a notice of tort claim.  Cal. Gov't Code §§ 905, 911.2, 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

In pleading a state court claim against state officials, Plaintiff must allege facts demonstrating compliance with the presentation requirement of the California Tort Claims Act.  *State of California v. Superior Court*, 32 Cal.4th 1234, 1243-44 (2004); *Snipes v. City of Bakersfield*, 145 Cal.App.3d 861, 865 (Cal. App. 1983).  Failure to allege compliance is fatal to the cause of action, and results in the dismissal of a state law claim against state officials.  *Id.*; *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969).   Additionally, to comply with the California Tort Claims Act, a complaint must at a minimum, "identify the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted."  Cal. Gov't Code § 910(c).

Here, Plaintiff fails to allege compliance with the California Tort Claims Act in his complaint.  If Plaintiff has submitted a governmental claim as to these state-defendants and it was rejected, he must allege this compliance with the Act.  If has not submitted this claim, he may not proceed with his intentional infliction of emotional distress claim in this action, at this time.  *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (dismissal of state law claim is proper where the complaint failed to allege compliance with the California tort procedure).  Moreover, Plaintiff's sole allegation regarding his emotional state is that signing a release form and having his infected surgical wound treated was "physically painful and psychologically harmful." (Doc. 1 at 8). Therefore, Plaintiff failed to identify the defendants against whom he sought to assert this claim, or to make factual allegations establishing the elements named above.  Given that Plaintiff failed to allege compliance with the California Tort Claims Act, and to allege facts supporting the claim, Plaintiff failed to raise a cognizable claim for intentional infliction of emotional distress.

G.   Procedural due process and disciplinary hearings

Though Plaintiff does not name the Fourteenth Amendment as a ground for relief, Plaintiff seeks redress for false accusations by defendant Hayes, and the resulting punishment imposed by defendant James, in a disciplinary proceeding at the prison. (Doc. 1 at 9-10).  In addition, Plaintiff asserts Warden Ken Clark and the CDCR Director "are responsible for allowing illegal disciplinary

action to stand and continue." *Id.* at 10.  Therefore, the Court will look to the Due Process Clause of the Fourteenth Amendment to determine the rights Plaintiff should be afforded, and the whether there was a deprivation of his rights with the disciplinary hearing held on January 12, 2009.

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." *U.S. Constitution, amend. XIV §1.*  Thus, the Due Process Clause protects inmates from the deprivation of liberty without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  This clause guarantees both procedural and substantive due process: the procedural due process component protects individuals against the deprivation of liberty or property by the government, while substantive due process protects individuals from the arbitrary deprivation of liberty by the government.  *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).

Freedom from false accusations is not guaranteed by the Due Process Clause; rather, it guarantees procedural safeguards so a prisoner may defend himself from any such false accusations. *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986), *cert. denied,* 485 U.S. 982 (1988); *Barnett v. Norman*, 2010 U.S. Dist. LEXIS 35976, at *19 (E.D. Cal. Mar. 17, 2010).  "Prison disciplinary proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.  The Supreme Court established five minimal procedural requirements in a prison disciplinary proceeding: written notice of the charges; a minimum of 24 hours from the time the prisoner receives notice and the time of the hearing; "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;" the right of a prisoner to defend by calling witnesses and presenting documentary evidence, when doing so is not hazardous to institutional safety or correctional goals; and legal assistance when the inmate is illiterate or the issues are legally complex.  *Id.* at 563-71.  When these requirements are met, due process has been satisfied.  *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994); *see also Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984) (holding when an inmate is afforded procedural due process in a disciplinary hearing, allegations of a fabricated charge fail to state a claim under 42 U.S.C. § 1983).

According to Plaintiff, he received notice on December 15, 2008, that disciplinary action was being pursued and that the hearing would be held on January 12, 2009. (Doc. 1 at 8). Plaintiff provided a copy of the "Rules Violation Report," stating the he was charged with "behavior which could lead to violence," and "staff manipulation." (Doc. 1, Ex. C at 1-2). Plaintiff was permitted to call Correctional Officer Williams as a witness. After the hearing, Plaintiff was given a statement by defendant James regarding the evidence, a copy of which, he provided to the Court. *Id*. at 3-6. Therefore, the five procedural requirements of the prison disciplinary hearing were met and Plaintiff is unable to state a cognizable claim against defendants James, Ken Clark, or the CDCR Director for a violation of due process based upon the disciplinary proceeding.

### H.   Retaliation

Plaintiff alleges retaliation for protected actions by defendant James. According to Plaintiff, defendant "James informed Plaintiff that he was ordering 'he never see the sun' for 90 days due to the fact Kennedy 'wasted his time' by not pleading 'guilty' and calling witnesses . . . [and] retaliated by ordering the maximum punishment allowed, and even punishments illegal by established law."[3] (Doc. 1. at 10). In this manner, Plaintiff asserts defendant James ordered the disciplinary action "with malicious intent and retaliatory purposes. *Id.*

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The Ninth Circuit opined,

> Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such as actions violate the Constitution quite apart from any underlying misconduct they are designed to shield.

*Rhodes v. Robinson*, 408 F.3d at 567. Thus, allegations of retaliation against a prisoner's exercise of these rights may support a claim under § 1983. *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985). A viable claim for retaliation "entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

---

[3] Plaintiff believes his punishment of 90 days without yard privileges was a violation of established law. (Doc. 1 at 10). Below, the Court will address this concern.

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.  An adverse action is one any action that "would chill or silence a person of ordinary firmness from future First Amendment activities." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000), *quoting Mendocino*, 192 F.3d at 1300.

Plaintiff has not alleged in his complaint that the actions of defendant James chilled or infringed on his First Amendment rights.  To state a cognizable claim for relief under §1983 for retaliation, Plaintiff's complaint must contain factual allegations demonstrating a chilling effect upon his First Amendment rights. *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997); *Resnick v. Hayes*, 213 F.3d 442, 449 (9th Cir. 2000) (holding that a plaintiff failed to state a retaliation claim in part because he had not alleged that his First Amendment rights were chilled or infringed).  Moreover, Plaintiff failed to establish the action by defendant James in giving Plaintiff the maximum punishments "did not reasonably advance a legitimate correctional goal." *See Rhodes*, 408 F.3d at 658.  When an inmate alleges retaliation under section 1983, he "must allege that he was retaliated against for exercising his constitutional rights *and* that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994)(emphasis added); *see also Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1994) (when alleged retaliatory discipline is imposed for a violation of prison rules or regulations, a claim for retaliation must fail).  Here, as Plaintiff states, he was found guilty of a rules violation, and consequently the discipline was imposed for a violation of prison rules.  Thus, Plaintiff failed to state a cognizable claim against defendant James for retaliation.

I.   Loss of exercise yard privileges

Plaintiff argues that his punishment of ninety days without yard privileges was "illegal by established law." (Doc. 1 at 10).  Specifically, Plaintiff was "[a]ssessed ninety (90) days loss of AM and PM Yard privileges . . . [beginning] January 12, 2009 and continuing through April 12, 2009. (Doc. 1 at 42).  However, Plaintiff does not clarify whether this claim is alleged as a violation of the Eighth Amendment as cruel and unusual punishment, or the Fourteenth Amendment, as a violation of a protected liberty interest.  Therefore, the Court will address both amendments to the extent they

offer Plaintiff protection.

### 1. Eighth Amendment

The deprivation of outdoor exercise by prison officials may constitute cruel and unusual punishment in violation of the Eighth Amendment. *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1995). The Ninth Circuit opined that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates. *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979). Consequently, as a general rule, prison officials may not deprive inmates of regular exercise. *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1393 (N.D. Cal. 1984). However, prison officials may restrict outdoor exercise on the basis of weather, unusual circumstances, or disciplinary needs. *See Spain*, 600 F.2d at 199; *see also LeMaire v. Maass*, 12 F.3d 1444, 1457-58 (9th Cir. 1993) (where the loss of yard privileges was a result of the plaintiff's disciplinary violation, the deprivation of outdoor exercise "most of a five-year sentence" did not rise to a constitutional violation because the plaintiff could still exercise within his cell).

In determining whether a deprivation of outdoor exercise is sufficiently serious, the Court must consider the circumstances, nature, and duration of the deprivation. *Spain*, 600 F.2d at 199. Temporary denial of outdoor exercise with no medical effects is not a substantial deprivation. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). Moreover, for a deprivation of exercise to rise to the level of a constitutional violation, a defendant must exhibit "deliberate indifference" to the plaintiff's need for exercise. *See id.*; *see also Farmer*, 511 U.S. at 834.

Here, Plaintiff alleges that he was deprived of outdoor exercise for ninety days as a result of the loss of his morning and afternoon yard privileges. (Doc. 1 at 9-10). Plaintiff admits that this loss was the result of a disciplinary hearing. Therefore, the actions of the prison officials in restricting his outdoor exercise were permitted. *See Spain*, 600 F.2d at 199. Even if this were not true, Plaintiff does not allege any adverse physical or medical effects as a result of his loss of yard privileges. Nothing in Plaintiff's complaint suggests Defendants were deliberately indifferent to his need for exercise. Therefore, Plaintiff failed to state a claim for a loss of exercise on Eighth Amendment grounds.

### 2. Fourteenth Amendment

As discussed above, liberty interests are protected by the Fourteenth Amendment. *Wolff*, 418 at 556. To state a claim for deprivation of liberty with procedural due process, a plaintiff must establish: "(1) a liberty or property or property interest protected by the Constitution; (2) a deprivation of the interest by the government, and (3) lack of process." *Portman*, 995 F.2d at 904. The Ninth Circuit has held that prisoners have a liberty interest in outdoor exercise, but the right to outdoor exercise is not absolute, and may yield to other considerations. *Norwood v. Vance*, 572 F.3d 626, 631-32 (9th Cir. 2009). Indeed, that is the case here: as discussed above, Plaintiff's right to exercise yielded to the penological interests of the prison after a disciplinary hearing. Thus, Plaintiff is unable to establish a "lack of process" and cannot state a cognizable claim under the Fourteenth Amendment for loss of exercise.

J.  Liability of defendants "Does 3-6"

Generally, "Doe" defendants are disfavored in the Ninth Circuit. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Clark v. Rolling Hills Casino*, 2010 U.S. Dist. LEXIS 55087, at *9 (E.D. Cal. May 5, 2010). However, when the identities of defendants are unknown, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie*, 629 F.2d at 642.

Though Plaintiff states that "Does 3-6" are "various staff," Plaintiff fails to state where these staff members worked, and in what capacity. Moreover, Plaintiff has failed to identify how these staff members acted in a manner that caused a violation of his rights. Plaintiff is required to allege specifically how each defendant—including Doe Defendants—violated his rights, and link each defendant's actions to the violation of his rights. *See West*, 487 U.S. at 28. Therefore, Plaintiff has failed to state a cognizable claim against Does 3-6, and he should not be permitted an opportunity to identify the unknown defendants. The Complaint as to defendants "Does 3-6" is **DISMISSED.**

## VI.  Conclusion and Order

Plaintiff's complaint fails to state cognizable claims against Defendants. Therefore, the complaint is dismissed with leave to amend. This Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. *See Noll v.*

*Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987) (pro se litigants must be given leave to amend a compllaint unless it is clear the deficiencies could not be cured by amendment). Plaintiff's amended complaint should be **_brief_** and concise in accord with Fed. R. Civ. P. 8(a)[4], but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. *Iqbal*, 129 S.Ct. at 1948-49; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." *Bell*, 127 S.Ct. at1965 (citations omitted).

The amended complaint must include the caption and civil case number used in this order, and the words "Amended Complaint" on the first page. Plaintiff is advised that an amended complaint supercedes the original complaint. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). In addition, the amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. Plaintiff is warned "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567, *citing London v. Coopers & Lybrand*, 644 F2d 811, 814 (9th Cir. 1981); accord. *Forsyth*, 114 F.3d at 1474.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Complaint is dismissed with leave to amend;
2. Within 20 days from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order; and
3. <u>If Plaintiff fails to comply with this order, the action will be dismissed for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated:   **December 28, 2010**                    /s/ Jennifer L. Thurston
                                                  UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff is advised that the 57 pages comprising his original complaint are neither "brief" nor concise. Moreover, his First Amended Complaint, if he chooses to file one, should be filled with *facts* rather than Plaintiff's mere conclusions.